IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| ASSOCIATION OF WESTERN PULP AND PAPER WORKERS and ASSOCIATION OF WESTERN PULP AND PAPER WORKERS LOCAL 580 (UNION),<br><br>                   Plaintiffs,<br><br>            v.<br><br>WEYERHAEUSER PAPER CORPORATION,<br><br>                   Defendant. | Civil No.11-184-JE<br><br>OPINION AND ORDER |

       Thomas K. Doyle
       Bennett, Hartman, Morris & Kaplan LLP
       210 S.W. Morrison Street, Suite 500
       Portland, OR 97204
            Attorney for Plaintiff

       Richard N. VanCleave
       Brenda K. Baumgart
       Barran Liebman LLP
       601 S.W. 2nd Avenue, Suite 2300
       Portland, OR 97204-3159
            Attorneys for Defendant

1 - OPINION AND ORDER

JELDERKS, Magistrate Judge:

Plaintiffs, Association of Western Pulp and Paper Workers and Association of Western Pulp and Paper Workers Local 580 (collectively "the Union") bring this action seeking an Order requiring defendant Weyerhaeuser Paper Corporation ("Weyerhaeuser") to arbitrate a grievance filed by the Union on behalf of a Union member whom Weyerhaeuser had disciplined. The parties' cross motions for summary judgment are pending. For the reasons discussed below, the Union's motion for summary judgment is granted, and Weyerhaeuser's motion is denied.

## Factual Background

1. **Arbitration of suspensions under the parties' Collective Bargaining Agreement (CBA)**

The Union and Weyerhaeuser are parties to a Collective Bargaining Agreement (CBA) that sets out the terms and conditions applicable to Weyerhaeuser's employment of Union members. Section 17 of the CBA provides that represented Union members working for Weyerhaeuser can be suspended only for "just and sufficient cause." Section 29 of the CBA sets out the process applicable to the Union's appeal of Weyerhaeuser's discharge or suspension of Union members. Section 30(A) of the CBA provides that

> In the event the parties are unable to reach a settlement of a grievance or an appeal from discharge or suspension, the dispute may be moved to arbitration in accordance with the provisions of this Section.

Grievances that are not moved timely through the grievance process are deemed to be waived. Section 30(A). However, there are no provisions in the CBA imposing time limits for the arbitration of a grievance after it has been moved to arbitration. An arbitrator who addressed the question whether time limits applied after a grievance was submitted for arbitration concluded that

> There is no indication from the language [of the CBA] that the Parties intended that this stage of the process be tied to a time limit or that they intended to impose what amounts to a waiver . . . .

Arbitrator Ross Runkel, Opinion and Award, L-3 Subcontracting Hydraulic Repairs, Feb. 22, 2007 (Grievance 05–8-03-13).

2 - OPINION AND ORDER

Section 30(B)(1)(a) states that the arbitrator does not have the authority to modify or to impose obligations that are not expressly agreed to in the CBA. This Section further provides that challenges to the arbitrability of a grievance are to be submitted to an arbitrator. If the arbitrator is asked to consider a question of arbitrability, "s/he shall also be presented the question of the merits of the grievance and shall rule on the merits if s/he recommends that the dispute is arbitrable." Section 30(B)(1)(a) allows the parties to seek a "judicial determination of the question of arbitrability" after an arbitrator has made a recommendation concerning arbitrability. Questions concerning only the timeliness of the processing of a grievance are not considered to be questions of arbitrability. Id.

The procedure for submitting grievances to arbitration is set out in Section 30(F). This Section requires the Union to send requests for arbitration to the main office of the Association of Western Pulp and Paper Workers, and requires Weyerhaeuser to send requests for arbitration to the Pacific Coast Association of Pulp and Paper Manufacturers. Those organizations are then, by mutual agreement, to set a date for an arbitration hearing, provide notice to the arbitrator, and provide other details needed for the hearing. Id.

Substantial evidence in the record before the court indicates that, beginning in 2006, the parties agreed to arbitrate grievances in the order that they were submitted for arbitration. Between 2006 and 2010, the parties arbitrated 19 suspension and discharge cases. Though these cases were not arbitrated in chronological order relative to the other kinds of pending grievances, they were arbitrated in their chronological order relative to suspension and discharge grievances.

The record establishes that the Union ultimately became dissatisfied with determining the order of grievance arbitration chronologically, and sought to end that practice. In an e-mail dated July 14, 2009, counsel for the Union stated that

> Any agreement by the Union to work on an oldest first system was meant to deal with a significant backlog of arbitrations and not to set a permanent priority for grievance. To the extent that any priority agreement existed it is the Unions' position that it has served its purpose and by this e-mail we are informing the company that any such agreement is now terminated. As you are aware neither party has the unilateral ability to control the priority of pending arbitrations under the CBA. The Union is prepared to discuss a new priority system which will have sufficient flexibility to

3 - OPINION AND ORDER

address the most important needs of the workplace.

In July, 2010, the Union filed an unfair labor practice charge with the National Labor Relations Board (NLRB) alleging that Weyerhaeuser had repudiated the parties' agreed upon arbitration process by insisting that grievance cases be arbitrated in chronological order. The NLRB Regional Director concluded that there was insufficient evidence to establish that Weyerhaeuser had violated the National Labor Relations Act, and dismissed the charge.

2. **Arbitration of the grievance at issue in this action**

This action arises from Weyerhaeuser's discipline of Rama Mitchell, a Union member. Based upon his alleged refusal to appear for work on March 15, 2010, on July 8, 2010, Weyerhaeuser suspended Mitchell for two days and warned him that "any further violations of the contract will result in disciplinary action up to and including termination" of his employment. On July 16, 2010, the Union filed a grievance asserting that Mitchell's suspension was "not for just and sufficient cause." After the grievance process was otherwise exhausted, the Union sought to have the grievance arbitrated.

In an e-mail to the Union's counsel sent on September 22, 2010, Weyerhaeuser's counsel stated that Weyerhaeuser's "position is that cases are to be heard in chronological order," and that, though suspension and discharge cases "may be heard ahead of older language cases . . . they too must follow chronological order." Counsel asserted that this had been Weyerhaeuser's position "for at least 4 years," and that Weyerhaeuser was "more than willing to hear the Mitchell case, but [was] unwilling to do it out of order." Counsel added that the NLRB had "already dismissed a charge" that the Union had brought concerning the order in which grievance cases would be heard. Counsel invited the Union's counsel to provide "authority that says a Federal Court can compel the order in which cases are arbitrated," and added that, if the matter were litigated, it would take many months and only worsen the backlog of grievances awaiting arbitration.

In an e-mail to Weyerhaeuser's counsel dated October 13, 2010, a representative for the

4 - OPINION AND ORDER

Union asserted that Mitchell's "arbitration case" was to be heard at a meeting scheduled for October 20, 2010. In his response, Weyerhaeuser's counsel asserted that Weyerhaeuser was willing to arbitrate the grievance concerning Mitchell's suspension, but was "unwilling to take [Mitchell's] grievance out of chronological order (there are 2 older suspensions.)" Counsel asserted that Weyerhaeuser was willing to arbitrate Mitchell's case "after the 2 older suspensions are resolved by hearing or withdrawal."

In an e-mail dated October 14, 2010, Weyerhaeuser's counsel stated that Weyerhaeuser remained "willing to arbitrate [Mitchell's] case after the 2 older suspensions are resolved by hearing or withdrawal." On October 15, 2010, counsel for the Union sought to "confirm that the Company is refusing to arbitrate the Mitchell grievance," and added that, if Weyerhaeuser's counsel thought that Mitchell's grievance "was not procedurally arbitrable, then that is an issue for the arbitrator to decide." The Union's counsel asserted that the Union was "willing to bifurcate the hearing before the arbitrator into two parts so that we may resolve the Company's contention regarding arbitration procedure first."

Weyerhaeuser agrees that Section 29 of the CBA provides for a "separate procedural track for grievances involving discharge and suspension," and asserts that the parties agreed that the Union had the option of arbitrating cases involving such discipline ahead of "contract interpretation grievances." Weyerhaeuser contends that the Union has violated "established procedure" by attempting to arbitrate certain grievances, including Mitchell's grievance, out of their normal chronological sequence.

In the present action, the Union seeks an Order requiring Weyerhaeuser to arbitrate the Mitchell grievance. Though Weyerhaeuser has asserted no counterclaims, in its cross motion for summary judgment, it seeks an order requiring that grievances "be heard in chronological order as the parties agreed in 2006."

### **STANDARDS FOR EVALUATING MOTIONS FOR SUMMARY JUDGMENT**

Federal Rule of Civil Procedure 56(c) authorizes summary judgment if no genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law.

The moving party must show the absence of an issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  The moving party may discharge this burden by showing that there is an absence of evidence to support the nonmoving party's case.  Id.  When the moving party shows the absence of an issue of material fact, the nonmoving party must go beyond the pleadings and show that there is a genuine issue for trial.  Id. at 324.

      The substantive law governing a claim or defense determines whether a fact is material. T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). Reasonable doubts concerning the existence of a factual issue should be resolved against the moving party.  Id. at 630-31.  The evidence of the nonmoving party is to be believed, and all justifiable inferences are to be drawn in the nonmoving party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1985).  No genuine issue for trial exists, however, where the record as a whole could not lead the trier of fact to find for the nonmoving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## Discussion

      The parties agree that Section 29 of the CBA provides a separate procedural track for grievances concerning suspensions and terminations, and agree that the Union has the option of having grievances addressing such discipline arbitrated ahead of grievances concerning other matters. Their dispute is not whether Mitchell's two-day suspension is to be arbitrated, but whether it must arbitrated in its chronological order relative to other grievances concerning discipline that are ready for arbitration.  From the record before the court, it appears that at most three grievances concerning discipline are chronologically ahead of the Mitchell grievance.

      It seems likely that, had the Union not asserted its right to compel arbitration out of the chronological sequence, the Mitchell grievance would have been arbitrated months ago. Therefore, it appears that the Union brought this action in order to establish its right to have grievances arbitrated in the order of its choosing.

      The Union's complaint alleges that "procedural arbitrability objections are to be resolved by the arbitrator," and the Union argues that, while Weyerhaeuser is "free to allege procedural

deficiencies" related to the timing of the arbitration "to the arbitrator," it cannot use procedural issues "to avoid arbitration."   In its memorandum in support of its motion for summary judgment, the Union contends that "the court must limit its analysis to the question of whether the parties agreed to arbitrate the dispute over the suspension of Mr. Mitchell," and argues that Weyerhaeuser "may only avoid arbitration by producing clear evidence the parties intended to exclude the substance of the dispute from arbitration."   As is apparent from the discussion below, I do not think that the issue before the court is this narrow, but instead conclude that I must determine whether Weyerhaeuser's refusal to arbitrate the Mitchell grievance "out of order" effectively denies the arbitrability of the grievance.

Weyerhaeuser does not deny that the <u>substance</u> of the grievance concerning Mitchell's suspension is arbitrable under the CBA.  Instead, its unequivocal assertion that it "stands ready, willing and able to arbitrate cases in the order they were filed by the Union" presumably applies to the Mitchell grievance.  The dispute underlying this action is instead whether grievances arising from suspensions and terminations are to be heard in the chronological order in which such grievances are filed, or whether the Union can choose the order in which grievances concerning such discipline are arbitrated.

The Union contends that this question of the order in which grievances will be heard must be determined, in the first instance, by an arbitrator.  Weyerhaeuser disagrees. It argues that this is a matter for this court, and that "[l]ogic, common sense, and business necessity dictate that grievances should be heard in the order in which they were filed by the Union."  Defendant's memorandum in support of motion for summary judgment at 8.  Though it did not seek such relief in a counter-claim, Weyerhaeuser  now seeks an Order requiring that grievances concerning suspensions and terminations must be heard in their chronological order relative to each other. Weyerhaeuser asserts that this court "should exercise its inherent authority under Section 301 [of the Labor Management Relations Act, 29 U.S.C. § 185] and order that grievances be heard in chronological order as the parties agreed in 2006."  Weyerhaeuser contends that this court may enter such an order because federal courts have the authority to create the federal law that applies

7 - OPINION AND ORDER

to labor relations.

Because the CBA is the foundation of the parties' obligations, analysis of the parties' arguments begins with that document. See, e.g., <u>AT&T Technologies, Inc. V. Communications Workers of America</u>, 475 U.S. 643, 648 (1986) (arbitration is matter of contract, party cannot be required to arbitrate dispute it has not agreed to submit to arbitration). No provision in the CBA states or implies that grievances submitted for arbitration must be arbitrated in any particular order. However, careful examination of the CBA confirms that, as a practical matter, the establishment of the hearing dates for grievances submitted for arbitration necessarily determines the order in which arbitrations will be conducted. The method for determining hearing dates is set out in Section 30(F). This Section requires the parties to set arbitration hearing dates "by mutual agreement," but does not specify how the parties are to proceed where, as here, they cannot agree as to a date.

In refusing to agree to schedule the Mitchell arbitration until the Union agrees that it will be arbitrated in its chronological order relative to other grievances concerning discipline, Weyerhaeuser is effectively denying that the grievance is, at present, arbitrable. Though the CBA does not specify how the parties are to proceed if they cannot agree to the schedule for an arbitration hearing, it does specify the procedure for resolving disputes concerning arbitrability: Section 30(B)(1)(a) provides that, if Weyerhaeuser challenges "the arbitrability of any grievance, the question of arbitrability shall be submitted to the arbitrator for his/her recommendation of whether or not the grievance is arbitrable." This Section further provides that, if the arbitrator concludes that the grievance is arbitrable, "s/he . . . shall rule on the merits if s/he recommends that the dispute is arbitrable."

Weyerhaeuser's assertion that the Mitchell grievance cannot be arbitrated "out of order" effectively asserts that the grievance is presently not arbitrable. This raises a question of arbitrability which, in the first instance, is a matter for an arbitrator under Section 30(B)(1)(a). Accordingly, this issue should be presented to an arbitrator. In conformance with Section 30(B)(1)(a), that arbitrator should make a recommendation concerning the present arbitrability of

8 - OPINION AND ORDER

the grievance, and should rule on the merits of the grievance if he or she concludes that it can be arbitrated out of order. Under Section (B)(1)(b), a party that disagrees with the Arbitrator's conclusion as to arbitrability subsequently "seek a judicial determination of the question of arbitrability."

Section 30(B)(1)(b) provides that issues "involving only the timeliness of grievance processing are not considered to be questions of arbitrability. . . ." This does not mean that the present dispute concerning the timing of arbitrations is not arbitrable, because "grievance processing" occurs <u>before</u> a grievance is submitted to arbitration. Weyerhaeuser does not contend that the "processing" of the Mitchell grievance has not been timely, and there is no evidence in the record that the processing of that grievance has been deficient in any manner. The present dispute concerns the timing of the arbitration of that grievance, relative to other grievances concerning suspensions and terminations, which is a different issue than that of timeliness.

### Conclusion

Plaintiff's motion for summary judgment (# 8) is GRANTED and defendant Weyerhaeuser's cross motion for summary judgment (# 11) is DENIED.

DATED this 4th day of October, 2011.

        /s/ John Jelderks
        John Jelderks
        U.S. Magistrate Judge

9 - OPINION AND ORDER